Katya J. Culberg (SBN: 215288)
KCulberg@wga.org
Associate Counsel
Writers Guild of America, West, Inc.
7000 W. Third Street
Los Angeles, California 90048
Telephone: (323) 782-4521
Facsimile: (323) 782-4806

Attorney for Plaintiff

FILED
12 DEC 21 PM 1:26
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CV12-10890 JFW (PJWx)

WRITERS GUILD OF AMERICA, WEST, INC.,

Plaintiff,

vs.

CRYSTAL SKY PICTURES, LLC, STEVEN PAUL, AN INDIVIDUAL, and DOES 1 through 10,

Defendants.

CASE NO.: ________

**COMPLAINT TO CONFIRM ARBITRATION AWARD**

Plaintiff Writers Guild of America, Inc., West, ("Guild") brings this action to confirm an arbitration award and, in support of its complaint, alleges as follows:

**THE PARTIES**

1. The Guild is a labor organization within the meaning of 29 U.S.C. § 152(5). It maintains its principal office at 7000 West 3rd Street, Los Angeles, California 90048. At all relevant times herein, the Guild has been the collective bargaining representative of writers employed by certain employers in the entertainment industry, an industry affecting commerce as defined by 29 U.S.C. §§ 142(1), 152(6) and 152(7).

2. Defendant Crystal Sky Pictures, LLC, ("Crystal Sky") is a California Corporation. Its principal place of business is located at 10203 Santa Monica Blvd., 5th Floor, Los Angeles, California, 90067. At all relevant times herein, Crystal Sky has been an employer within the meaning of Section 2(2) of the National Labor Relations Act, 29 U.S.C. § 152(2).

3. Defendant Steven Paul is an individual and principal owner of Crystal Sky. At all relevant times herein, Mr. Paul was doing business in California.

4. The WGAW does not know the true names of DOES 1 through 10, inclusive, and therefore sues them by fictitious names. On information and belief, the individuals and/or entities named herein as DOES 1 through 10 have participated in some manner in the wrongful acts and omissions alleged herein and thus are individually, severally or jointly liable to the WGAW for the injuries alleged in this Complaint. WGAW will seek leave of this Court to amend the Complaint upon learning the true names and capacities of DOES 1 through 10.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and 28 U.S. C. § 1331 because the Guild maintains its principal place of business in this District and its duly authorized officers and agents are engaged in representing employees in this District.

6. Venue is proper in this District because Defendants, and each of them, have at all relevant times, within the State, conducted continuous, systematic and routine

business within the County of Los Angeles, within the State of California, and have purposefully committed acts from which this Complaint arises.

## FACTUAL ALLEGATIONS

### The Agreement

7. At all relevant times herein, the Guild and Crystal Sky have been parties to the Writers Guild of America Theatrical and Television Basic Agreement ("MBA"), an industry-wide collective bargaining agreement between the Guild and various employers in the motion picture and television industry.

8. At all relevant times herein, Steven Paul was a guarantor for the obligations of Crystal Sky under the MBA. Mr. Paul expressly agreed to be jointly and severally liable with Crystal Sky for any arbitration award.

9. Article 10 of the MBA calls for the submission of disputes to arbitration, including disputes over the failure to pay compensation due to credited writers and to make required pension and health contributions.

### The Arbitration

10. In 2002, Defendant Crystal Sky employed Aged in Wood Productions, Inc., f/s/o Mike Werb, and Sleepyhead Productions, Inc., f/s/o Michael Colleary, to write a theatrical motion picture screenplay based on the video game "Tekken" ("Screenplay"). Mr. Werb and Mr. Colleary shall be referred to collectively herein as "Writing Team."

11. In 2009, a dispute arose between the Guild and Defendants concerning Defendants' failure to pay compensation due to Writing Team in connection with the theatrical motion picture project "Tekken." In particular, Defendants entered into an employment agreement in which they initially agreed to pay Writing Team a $100,000 production bonus due upon commencement of principal photography of a motion picture based on the Screenplay.

12. Defendants and Writing Team subsequently amended the employment agreement whereby Defendants agreed to double Writing Team's production bonus to $200,000 due upon commencement of principal photography of a motion picture based on the Screenplay.

13. In February of 2008, Defendants produced a theatrical motion picture based on the Screenplay. Defendants paid Writing Team $100,000 in production bonus compensation but have failed and refused to pay the Writing Team the unpaid balance of $100,000. Furthermore, Defendants have failed and refused to make the attendant pension and health contributions on behalf of Writing Team due on the unpaid production bonus.

14. On April 1, 2009, the Guild served Defendants with its Notice of Claim Submitted to Arbitration and Claim, outlining the allegations supporting the Guild's claim that Defendants failed to pay the full amount of the production bonus compensation owed to Writing Team and failed to make the attendant pension and health contributions.

15. On January 25, 2011, the Guild served Defendants with the Notice of Arbitration Hearing, indicating that the arbitration hearing in this matter would occur on April 7, 2011, at the Guild's offices.

16. On May 5, 2011, the Guild served Defendants with the Amended Notice of Arbitration Hearing, indicating that the arbitration hearing in this matter would occur on June 22, 2011.

17. On June 2, 2011, the Guild served Defendants with the Second Amended Notice of Arbitration Hearing, indicating that the arbitration hearing in this matter would occur on January 13, 2012, at the Guild's offices.

18. The arbitration hearing was held on January 13, 2012, before sole neutral Arbitrator Edgar A. Jones, at which time the Guild presented evidence concerning Defendants' failure to pay the production bonus compensation owed to Writing Team and failure to make pension and health contributions on such compensation. Defendants presented evidence in defense of their failure to pay Writing Team the balance of the unpaid production bonus compensation. Following the hearing, both parties submitted post-hearing briefs.

19. On August 7, 2012, Arbitrator Jones issued the Opinion and Award ("Award") ordering, *inter alia*, Defendants to pay the unpaid balance of the production bonus compensation in the amount of $100,000.00, plus interest in connection with the late-payment thereon, and to pay the owed pension and health contributions on behalf of the Writing Team, plus interest in connection with the late-payment thereon. A true and accurate copy of the Award is attached as Exhibit A and incorporated by reference.

20. The Award also ordered the Guild would pay the arbitrator's fees and expenses in the total amount of $6,135.00, and was assigned the right to be reimbursed by Defendants for their share of the arbitrator's fees and expenses in the amount of $3,667.50. This amount, $3,667.50, also remains due and unpaid.

21. The arbitrator served the Award upon Defendants and the Guild subsequently made a demand for Defendants' payments due thereunder, but Defendants refuse and continue to refuse to comply with the terms of the Award.

22. The Guild is entitled to have the Award confirmed and judgment entered against Defendants thereon.

WHEREFORE, the Guild prays for the following:

1. An order confirming the Award in all respects;

2. An order entering judgment in conformity therewith;

3. An order for attorney's fees and costs of suit herein; and

4. Such other and further relief as the Court deems just and proper.

Writers Guild of America, West, Inc.

DATED: December 17, 2012 By: ______________________
Katya J. Culberg
Attorney for Plaintiff



W:\CASE FILES\Compensation cases\CO09011\PTC\Draft Complaint to confirm arbitration award.docx

# Exhibit A

In the Matter of Arbitration
before
The Writers Guild of America, west, Inc.
Producers Arbitration Tribunal
between
WRITERS GUILD OF AMERICA, WEST, INC.,
Complainant,
and
CRYSTAL SKY PICTURES, LLC, and
STEVEN PAUL, an individual
Respondent,
before,
Edgar A. Jones, Jr.
Neutral Arbitrator

OPINION
and
AWARD

August 7, 2012

Case No. 09-CO-001
("Tekken")

## I.
## Findings of Fact [1]

Respondent Crystal Sky Pictures, LL.C, is signatory to the Writers Guild ("WGA") Theatrical and Television Basic Agreements ("MBA") of 2001 (G.Ex #1) and 2004. (G.Ex #2). On June 17, 2002, Company Vice President Joseph Inga executed a Letter of Adherence to the 2001 MBA. (G.Ex.#3) On February 17, 2006, Company President Steven Paul executed a Letter of Adherence to the 2004 MBA. (G.Ex.#4) On February 17, 2006, Mr. Paul executed a Letter of Guarantee under the 2004 MBA. (G.Ex.#5)

On October 1, 2002 (as of July 31, 2002), Respondents entered into an employment agreement with the Team of Writers, Mike Webb and Michael Colleary, ("Team") using Webb's f/s/o Aged in Wood Productions, Inc., and Colleary's f/s/o Sleepyhead Productions, Inc.[2] (G.Ex.#6) ("Agreement") "in connection with a motion picture

---

1 During the course of the hearing in this matter both parties were afforded a full opportunity to present evidence, to cross-examine witnesses and to develop argument, including the submission of post-hearing briefs. All witnesses appearing were duly sworn. No official record of the proceeding was made.
In the interests of avoiding the cumulative and concentrating on the determinative, in writing this Opinion there has been no effort to summarize all of the evidence nor to discuss each contention.

2 In the Agreement, "Mike Werb and Michael Collearly are collectively referred to as 'Artist' and their loan-out corporations are collectively referred to as 'Lender.' " (G.Ex.#6, p. 9)

("Picture") based on the video game "Tekken" ("Game") "on a 'pay-or-play' basis for the aggregate sum of $1,125,000 (the 'Guaranteed Fee')." It covered the writing of a Draft Screenplay, a First Rewrite, a Second Rewrite and thereafter the Producer's option for a Polish. (G.Ex.#6, par.1.a)

Paragraph 3 provided for a "Production Bonus" of $100,000.00 "payable promptly after commencement of principal photography of the Picture, whether or not Artist receives any writing credit in connection with the Picture." (G.Ex.#6, par.3)

Paragraph 5, "Conditions," provided in relevant part: "Producer's obligations hereunder are subject to (a) . . . and (b) execution of this Agreement by Artist and Lender and notarization on behalf of each Artist." (G.Ex.#6, par.5)

Paragraph 7, entitled, "Incorporation of Attached Agreement," refers to provisions of a "WRITER'S AGREEMENT - LOANOUT." relating to an attached motion picture, "Hatchlings," which is "incorporated herein [excluding certain specified redacted provisions] in its entirety (including the ... Standard Terms and Conditions attached thereto) as if the terms thereof had been herein set out in full, except to the extent the terms hereof conflict with the terms of the Attached Agreement, in which case the terms of this Agreement shall govern." (emphasis added) (G.Ex.#6, par.7)

Unredacted was Paragraph 13.3 that states: "This Agreement constitutes the entire agreement between Company and Artist with respect to the subject matter hereof and may only be amended by a written instrument executed by Company and Lender." (emphasis added) (G.Ex.#6, par.7)

In 2003, pursuant to the Agreement, the Team wrote and delivered the first Draft of the Screenplay and the First and Second Rewrites for which they were paid. (Tr. 29)

Nine months later, in the spring or early summer of 2004, Charles Stone, "as is often the case, the director, became attached to the draft that we had written, and ... wanted us to make massive changes to our most recent screenplay, what Mr. Colleary and I will describe as a page-one rewrite or really a start-over. He had a completely different vision of the film; and so we were approached to write another draft." Mr. Werb recalled that it was Mr. Paul and Patrick Ewald, a Company production executive or creative executive. "Well, there was an issue because we only had an optional step for a polish, which is generally a very short-term punch-up of the script with notes, and this was not the case. So there was a problem with the request ... we essentially felt there was

not a deal in place to do a start-over screenplay; and so this was discussed with our representatives who subsequently discussed the issue with Mr. Paul's representatives of business affairs, I assume, at Crystal Sky about how to handle it." (Tr. 29-31)

In June, 2004, the Team met with the new director, Charles Stone, "to hear what changes the director wanted and how he saw the movie as opposed to how we saw the movie. ... We had a fairly detailed ... outline of the director's and/or [Jesse Berdinka] his development executive's or creative executive's ... thoughts on adapting the video game to the film he wanted to direct." The outline was 14 pages, including six single-spaced pages of text and a published article about genetic manipulation.* (G.Ex.#7) Mr.Werb and his partner made notations on the pages about their reactions. (Tr.32-34)

It was obvious to the Team that Director Stone had a completely different concept of the film than their draft screenplay. "He wanted to make a ... tournament fighting movie. It was a much more direct adaptation of the video game ... a lot more about fighting, more of a buddy film about fighting, and that was not what we had written." Mr. Werb believed that Mr. Stone's changes "constituted ... what is known in the industry as a 'page-one rewrite' or a start-over ... a different genre movie, really ... having worked in the business for so long, we are kind of used to directors deciding that they want something completely new, and we had very good experience working with Mr. Paul and Patrick and Crystal Sky; after the meeting, we decided we wanted to be good partners on the 'Tekken' movie, which we believed ... would be made. ... We just decided we would try and do a good job."" (Tr.35-36)

They asked their lawyers, Peter Nelson and Mike Adler, and their agent, David Lubliner, to negotiate a new deal so they could do a third rewrite for additional compensation. The negotiations were conducted by email and telephone. Mr. Nelson testified, "I was informed that Crystal Sky didn't want to pay more, presently, for the rewrite, but proposed that when the movie would be green-lit or produced, that on commencement of photography, Werb and Colleary would receive an additional hundred thousand dollar in consideration of writing that rewrite, to make a total of $200,000." (Tr.114)

On May 22, 2004, the negotiations culminated when Peter Nelson and Michael Adler received an email from Crystal Sky's Jason Price. It read as follows (G Ex. #8, p.1):

Subject: Tekken- Werb and Colleary

Peter and Michael:

Attached please find the amendment to the writer agreement based on our discussions with David Lubliner.

Please let me know if you have any questions or comments.

Best regards,

Jason

The email attachment was a single page that read (G Ex. #8, p.2):

"TEKKEN" AMENDMENT TO WRITER AGREEMENT

* * *

Pursuant to Paragraph 3 of the Original Agreement, the Production Bonus shall be increased from $100,000 to $200,000, payable after the commencement of principal photography, if ever.

Except as expressly amended by this Amendment, all other terms and conditions set forth in the Original Agreement shall remain unchanged and in full force and effect, and the terms of this Amendment shall be incorporated into the Original Agreement.

SLEEPHEAD PRODUCTIONS, INC.

By:________________________________
Its:____________________________

AGED IN WOOD PRODUCTIONS, INC.

By:________________________________
Its:____________________________

CRYSTAL SKY PICTURES, LLC.

By:________________________________
Its:________________________________

Mr. Werb testified on cross-examination that, "to my knowledge," neither he nor anyone else signed the Amendment, as provided for above. (Tr. 53)

Of the above Amendment, Mr. Nelson testified, "We had reached an agreement for the terms by which the next rewrite was to be written, and this was to reflect that agreement." (Tr. 118) The Team's representatives, Mr. Werb testified, "told us that we had a deal in place, and that it was satisfactory, and we should go ahead and proceed with the page-one rewrite." After that, they had additional conversations with either M. Stone and Mr.Bardinka, and the Crystal Sky creative team, "and then additional conversations, I believe, with Mr. Berdinka representing Mr. Stone." (Tr.43-44)

The Team didn't immediately commence the writing because "we had a lot of questions about the outline in the previous meetings for the director. ... The rewrite was

so extensive that it was very important to us, as we have learned working with many directors, to get as much clarity as possible before we start writing, because you don't want to go down the wrong path, and then weeks have gone by, wasted weeks, which could have been used to prep the movie." (Tr.45)

On August 5, 2004, they had a conference call with Mr. Stone, Crystal Sky people and Jesse Berdinka, that resulted in their accumulating three pages of their scribbled notes. (G.Ex.#9) They then arranged a meeting with Charles Stone, Jesse Berdinka, Steven Paul and possibly Patrick Ewald, "to clarify the rewrite from our point of view, to make sure we were on the same page, literally and figuratively, with the director." (Tr.44-45)

Thereafter, sometime in the fall of 2004, they commenced writing the third "Tekken" rewrite. On January 28, 2005, they completed a 108-page screenplay [G. Ex.#10] and delivered it to their agents who delivered it to Mr. Stone. (Tr.37) Mr. Stones' "response was that there was some good things in there, and he wanted to do his own," Mr. Werb testified, "He wanted to do a rewrite on our script." Mr. Paul's response was "very positive to the rewrite. Grateful that we did it in a reasonably timely fashion; happy with the results." (Tr.48)

In 2008, evidently in September, the Team was paid $100,000 as per the original production bonus, but not the additional $100,000 provided for in the amended agreement for the third rewrite; nor did Respondents make any contributions to the pension plan and health fund in connection with the unpaid bonus. (Tr.49-50)

## II.

## Conclusions

Respondents rely on the lack of signatures to the amended agreement (see above) as required by the *Hatchlings* contractual provisions incorporated by reference into the basic agreement with the Team providing for the production bonus of $100,000. The lack of signatures, they argue, means there is no contractual obligation to make the additional $100,000 production bonus that had, the record shows, been agreed upon during the negotiations about the third rewrite.

As in this case, "That the agreements were not signed does not of course imply that their terms were not binding upon the parties, particularly in an industry where unsigned documents are common," [3] observed Arbitrator Murray L. Schwartz. He noted that in that case, as here, the writers' negotiator had testified that the language of the unsigned agreement "embodied the agreements he had negotiated." [4]

In this case, Jason Price's email on behalf of Crystal Sky accurately stated the terms that the Company's and the Team's representatives had negotiated and agreed upon. In reliance upon its terms, the Team proceeded to work on the third rewrite which they wrote and submitted. That sequence contractually bound Crystal Sky to the terms thus agreed for the third rewrite.

In Paragraph 7 of the October 1, 2002 employment agreement with the Team, the terms of the attached *Hatchlings Case* were incorporated, "as if the terms thereof had been herein set out in full, <u>except to the extent the terms hereof conflict with the terms of the Attached Agreement, in which case the terms of this Agreement shall govern."</u> (emphasis added)

Those 2004 negotiations effectively amended the original agreement and thus made it impervious to the claim that the *Hatchlings* requirement for signatures should govern in this case. Therefore, the *Hatchlings* express exception to inclusion is applicable. As provided, the new contractual terms of the original agreement, as amended, "shall govern," thereby nullifying the *Hatchlings'* signatures requirement.

## III.

## <u>Award</u>

A. This matter was heard in Los Angeles, California, on January 13, 2012. Testimony was taken under oath and transcribed. Exhibits were received. Post-hearing briefs were filed May 2, 2012 and Reply Briefs on June 18, 2012. <u>Appearances</u>: for <u>Complainant:</u> Katya J. Culberg, Esq., WGA Associate Counsel; for <u>Respondents</u>: Kevin J. Leichter,, Esq.

---

3 See California Civil Code, section 1633.7 .

4 WGAW *and* T.A.T. Communications Company, Case No. 84-CL-111 (1-7-86)

B. The Award is that:

1. Respondents shall pay the balance of the unpaid production bonus of $100.000, plus interest in the amount of $67,810.36 as of January 13, 2012, continuing to accrue at 1.5% per month until paid in full;

2. Respondents shall pay the Pension Plan $6,000, and the Health Fund $$,500, and interest collectively totaling $5,522.69 as of January 13, 2012, continuing to accrue at .83% per month until paid in full.

3. The parties shall pay the Arbitrator's fee and expenses of $6,135.00, comprised of Respondents' $3,667.50 (which includes the unpaid untimely cancellation of fee of $1,200.00 for the 4-7-11 hearing), and Guild's $2,467.50; the Guild shall pay the total of $6,135.00, being hereby assigned the right to be reimbursed by Respondents for their due and payable share.

Edgar A. Jones, Jr.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John F. Walter and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

**CV12- 10890 JFW (PJWx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[ ] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Katya J. Culberg (SBN: 215288)
Writers Guild of America, West, Inc.
7000 W. Third Street
Los Angeles, CA 90048

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Writers Guild of America, West, Inc.<br><br>PLAINTIFF(S)<br>v.<br>Crystal Sky Pictures, LLC, Steven Paul, an individual, and DOES 1 through 10<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV12-10890 JFW (PJWx)<br><br>**SUMMONS** |

TO: DEFENDANT(S):

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ ______________ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Katya J. Culberg, whose address is 7000 W. Third Street, Los Angeles, CA 90048. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: DEC 21 2012

By: JULIE PRADO
Deputy Clerk 1154

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
WRITERS GUILD OF AMERICA, WEST, INC.

**DEFENDANTS**
CRYSTAL SKY PICTURES, LLC, STEVEN PAUL, an individual, and DOES 1 through 10

(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Katya J. Culberg (SBN: 215288) (323) 782-4521
Writers Guild of America, West, Inc.
7000 West Third Street, Los Angeles, CA 90048

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No ☐ **MONEY DEMANDED IN COMPLAINT:** $______

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
29 U.S.C. 185, confirmation of arbitration award

**VII. NATURE OF SUIT** (Place an X in one box only.)

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury- Med Malpractice
☐ 365 Personal Injury- Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien Detainee
☐ 465 Other Immigration Actions

**TORTS**
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/ Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE / PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☑ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

**FOR OFFICE USE ONLY:** Case Number: CV12-10890 JFW(PJWx)

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a). IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): ______

VIII(b). RELATED CASES: Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): ______

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] **Date** 12/21/12

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |